UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8957 PA (AJWx) | Date | February 13, 2012 |
|---|---|---|---|
| Title | Flor Marina Chavarro Saldaña, et al. v. Occidental Petroleum Corp. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Paul Songco | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   IN CHAMBERS

    Before the Court is a Motion to Dismiss filed by defendant Occidental Petroleum Corp. ("Occidental") (Docket No. 21).  Also before the Court is Occidental's Alternative Motion to Stay (Docket No. 22).  In its Motion to Dismiss, Occidental asserts that plaintiffs' Complaint both fails to state a claim for relief and that the Court lacks subject matter jurisdiction.  Accordingly, the Motion to Dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  Occidental's Alternative Motion to Stay seeks to stay these proceedings pending the Supreme Court's decision in Kiobel v. Royal Dutch Petroleum Co., No. 10-1491.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument.  The hearing calendared for February 13, 2012, is vacated, and the matters taken off calendar.

I.    Factual Background [1]

    Plaintiffs are family members of three union leaders who were killed by members of the Colombian National Army's 18th Mobile Brigade ("18th Brigade") on August 5, 2004, in the Saravena area of Arauca in Colombia.  According to the Complaint, the union leaders, Hector Alirio Martinez, Leonel Goyeneche Goyeneche, and Jorge Eduardo Prieto Chamucero, exited the house in which they

---

[1]    Occidental has requested that the Court take judicial notice of documents referenced in the Complaint but not attached to it.  Plaintiffs do not oppose Occidental's Request for Judicial Notice, but do object to the Court's consideration of argument contained within the Request for Judicial Notice.  The Court grants Occidental's Request for Judicial Notice.  See Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 n.1 (9th Cir. 2007) ("[I]t is proper to consider facts in the record found outside the complaint because [defendant's] motion to dismiss argues the presence of a political question, which would deprive us of subject matter jurisdiction.").  Of particular relevance is a report authored by the Government Accountability Office (Attached as Exhibit P to Occidental's Request for Judicial Notice). See U.S. Gov't Accountability Office, GAO-05-971, Security Assistance: Efforts to Secure Colombia's Caño Limón-Coveñas Oil Pipeline Have Reduced Attacks, but Challenges Remain (2005) ("GAO Report").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8957 PA (AJWx) | Date | February 13, 2012 |
|---|---|---|---|
| Title | Flor Marina Chavarro Saldaña, et al. v. Occidental Petroleum Corp. | | |

were staying with their hands in the air when they were shot, mostly in the back, by members of the 18th Brigade. After the incident, the soldiers involved allegedly radioed their base and falsely reported that the union leaders had attacked the unit and the members of the 18th Brigade were forced to return fire.

Plaintiffs commenced this action on October 28, 2011.[2/] The Complaint, which alleges that this Court possesses subject matter jurisdiction pursuant to both the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and diversity jurisdiction, 28 U.S.C. § 1332, asserts claims for: (1) war crimes; (2) extrajudicial killings; (3) crimes against humanity; (4) wrongful death; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) battery; (8) assault; (9) negligent hiring and supervision; and (10) negligence. Plaintiffs contend that Occidental should be liable for the 18th Brigade's alleged war crimes, crimes against humanity, and assorted torts arising out of the 18th Brigade's murder of the three union leaders because Occidental provided funding to the 18th Brigade.

Specifically, at the time of the incident, the 18th Brigade was responsible for providing security for the Caño Limón oilfield and pipeline in Arauca, Colombia. The Caño Limón oilfield is operated and partially owned by Occidental de Colombia, Inc. ("OxyCol"), a subsidiary of Occidental, through the Cravo Norte Association, a joint venture between OxyCol, Ecopetrol, Colombia's state-owned oil company, and Repsol, a Spanish oil company. According to the Complaint, the Cravo Norte Association began providing funding and supplies to the Colombian National Army in 1996, to support the Army's efforts to protect the Caño Limón oilfield and pipeline, which for many years was the target of frequent attacks orchestrated by the Revolutionary Armed Forces of Colombia ("FARC") and the National Liberation Army ("ELN").[3/]

In May 2004, Ecopetrol entered into a security agreement with the Colombian National Army to provide security for the Cravo Norte Association and the Caño Limón oilfield and pipeline ("2004 Security Agreement"). As part of that agreement, Ecopetrol pledged approximately $8.65 million annually to the 18th Brigade for "housing, food, land and air transportation, communication equipment, gasoline, and medical assistance." <u>GAO Report</u> at 9. According to plaintiffs, because Ecopetrol entered into the 2004 Security Agreement on behalf of the Cravo Norte Association and its partner OxyCol, Occidental itself should be considered to have provided funding to the 18th Brigade.[4/]

---

[2/]    Several of the plaintiffs named in this action are minors. Plaintiffs' counsel have not, however, sought to appoint guardians ad litem on behalf of the minor plaintiffs. Nor have plaintiffs' counsel complied with Local Rule 79-5.4(b), which requires that a minor's initials be used instead of their full names.

[3/]    The U.S. Department of State designated FARC and ELN as foreign terrorist organizations in 1997.

[4/]    In support of their liability theory, plaintiffs allege, in conclusory fashion, that OxyCol was acting as Occidental's agent or alter ego.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8957 PA (AJWx) | Date | February 13, 2012 |
|---|---|---|---|
| Title | Flor Marina Chavarro Saldaña, et al. v. Occidental Petroleum Corp. | | |

      Occidental's support of the 18th Brigade's mission to secure the Caño Limón oilfield and pipeline, regardless of whether that support is considered direct or indirect through OxyCol and the Cravo Norte Association, was provided at the same time that the United States was also providing direct financial and military support to the 18th Brigade's efforts to protect the Caño Limón oilfield and pipeline. Specifically, Congress appropriated $6 million to initiate training of the 18th Brigade in 2002. See GAO Report at 10 (citing 2002 Supplemental Appropriations Act for Further Recovery From and Response to Terrorist Attacks on the United States, Pub. L. 107-206, 116 Stat. 820, 855 (2002)). In 2003, Congress appropriated an additional $93 million to support the 18th Brigade's efforts to secure the Caño Limón oilfield and pipeline. See id. (citing Consolidated Appropriations Resolution, 2003, Publ. L. 108-7, 117 Stat. 11, 176 (2003)). These appropriations were part of a coordinated security strategy adopted jointly by the governments of Colombia and the United States, which was formalized in a memorandum agreement signed between the two countries in 2003. See id. at 8. "As stipulated in the agreement, a bilateral working group was formed, and it developed a plan to protect the Caño Limón pipeline. The Narcotics Affairs Section (NAS) in the U.S. Embassy, Bogotá, administers the day-to-day aviation components of the program, and the Military Group (MilGroup) in the U.S. Embassy, Bogotá, administers the day-to-day nonaviation components of the program." Id. at 8-9.

      Of the $99 million appropriated by Congress to secure the Caño Limón oilfield and pipeline, the Department of State spent $71 million to purchase helicopters and for related logistical support and ground facilities for the 18th Brigade. See id. at 10.[5/] The Department of Defense spent the remaining $28 million for U.S. Special Forces training and equipment for the 18th Brigade. See id. The training by the U.S. Special Forces, which started in January 2003 and continued through at least December 2004, provided training for about 1,600 members of the 18th Brigade "to improve their ability to act quickly in minimizing terrorist attacks along the Caño Limón pipeline. . . . U.S. Special Forces focused on helping the Colombian Army take a more proactive and aggressive approach to defend the pipeline; regain control of the area around the pipeline; and prevent, interdict, and disrupt the insurgents before they attack the pipeline. Training included developing quick reaction capabilities, small unit tactics, planning and conducting operations, reconnaissance, collecting and analyzing timely intelligence, and medical support." Id. at 13.

II.    Analysis

      Among the arguments Occidental raises in its Motion to Dismiss is that the Court lacks jurisdiction because plaintiffs' Complaint implicates the "political question doctrine" that prevents the Court from judging "the conduct of foreign relations by the United States government." Sarei v. Rio

---

    [5/]    The helicopters provided by the Department of State did not arrive in Colombia until 2005. For this reason, plaintiffs allege, on information and belief, that the helicopter that arrived following the August 2004 incident in which the 18th Brigade killed the union leaders may have been supplied to the 18th Brigade by Occidental pursuant to the 2004 Security Agreement between the Colombian National Army and the Cravo Norte Association.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8957 PA (AJWx) | Date | February 13, 2012 |
|---|---|---|---|
| Title | Flor Marina Chavarro Saldaña, et al. v. Occidental Petroleum Corp. | | |

Tinto, PLC, ___ F.3d ___, ___, 2011 WL 5041927, at *15 (9th Cir. Oct. 25, 2011). Specifically, Occidental contends that because plaintiffs are attempting to hold it liable for providing support and funding to the 18th Brigade at the same time and for the same purpose that the United States government was also providing funding and support to the 18th Brigade, a finding of liability against Occidental would necessarily call into question the support provided to the 18th Brigade by the political branches of the United States government.

"The nonjusticiability of a political question is primarily a function of the separation of powers." Baker v. Carr, 369 U.S. 186, 210, 82 S. Ct. 691, 706, 7 L. Ed. 2d 663 (1962). In Baker, the Supreme Court "outlined six independent tests for determining whether courts should defer to the political branches on an issue." Corrie v. Caterpillar, Inc., 503 F.3d 974, 980 (9th Cir. 2007). The six Baker factors are:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; [2] or a lack of judicially discoverable and manageable standards for resolving it; [3] or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; [4] or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; [5] or an unusual need for unquestioning adherence to a political decision already made; [6] or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Baker, 369 U.S. at 217, 82 S. Ct. at 710, 7 L. Ed. 2d 663. "The conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative — 'the political' — departments of the government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision." Oetjen v. Cent. Leather Co., 246 U.S. 297, 302, 38 S. Ct. 309, 311, 62 L. Ed. 726 (1918). However, "it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." Baker, 369 U.S. at 211, 82 S. Ct. at 707, 7 L. Ed. 2d 663. In the Ninth Circuit, courts are to "'undertake a discriminating case-by-case analysis to determine whether the question posed lies beyond judicial cognizance.' Nevertheless, 'cases interpreting the broad textual grants of authority to the President and Congress in the areas of foreign affairs leave only a narrowly circumscribed role for the Judiciary.'" Corrie, 503 F.3d at 982 (quoting Alperin v. Vatican Bank, 410 F.3d 532, 545 & 559 (9th Cir. 2005)).

In Corrie, the Ninth Circuit determined that the political question doctrine prevented the members of Palestinian families from pursuing an action for damages against Caterpillar, Inc. for Caterpillar's role in supplying bulldozers to the Israeli Defense Force ("IDF") that the IDF used to destroy the families' homes and killing those inside. In applying the political question doctrine to affirm the dismissal of the families' claims against Caterpillar, the Ninth Circuit explained that "each claim unavoidably rests on the singular premise that Caterpillar should not have sold its bulldozers to the IDF.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8957 PA (AJWx) | Date | February 13, 2012 |
|---|---|---|---|
| Title | Flor Marina Chavarro Saldaña, et al. v. Occidental Petroleum Corp. | | |

Yet these sales were financed by the executive branch pursuant to a congressionally enacted program calling for executive discretion as to what lies in the foreign policy and national security interests of the United States." Corrie, 503 F.3d at 982. The Ninth Circuit, applying Baker, concluded that "[a]llowing this action to proceed would necessarily require the judicial branch of our government to question the political branches' decision to grant extensive military aid to Israel. It is difficult to see how we could impose liability on Caterpillar without at least implicitly deciding the propriety of the United States' decision to pay for the bulldozers which allegedly killed the plaintiffs' family members." Id.; see also id. at 983 ("Whether to grant military or other aid to a foreign nation is a political decision inherently entangled with the conduct of foreign relations."); id. ("We cannot intrude into our government's decision to grant military assistance to Israel, even indirectly by deciding this challenge to a defense contractor's sales.").

Here, it is undisputed that in August 2004, when plaintiffs' family members were killed by members of the 18th Brigade, and at the time Occidental is alleged to have directly or indirectly provided support to the 18th Brigade to secure the Caño Limón oilfield and pipeline, it was the official policy of the executive and legislative branches of the United States to support the 18th Brigade's efforts. Because plaintiffs' theory of liability against Occidental is based solely on its role in providing funding for the 18th Brigade, and the United States provided far more — and more lethal — support to the 18th Brigade at the same time and for the same purpose, it is "difficult to see how we could impose liability on [Occidental] without at least implicitly deciding the propriety of the United States' decision to [provide funding and support] for the [military unit] which allegedly killed the plaintiffs' family members." Id. at 982.

Plaintiffs attempt to distinguish this case from Corrie based on the Ninth Circuit's statement in Corrie that the "decisive factor . . . is that Caterpillar's sales to Israel were paid for by the United States." Id. Plaintiffs argue that because the United States did not directly fund Occidental's efforts, Corrie does not apply because the "decisive factor" of direct funding is not present in Occidental's alleged support of the 18th Brigade. Contrary to plaintiffs' assertion, this Court does not read Corrie as requiring the United States' direct funding or other direct involvement in the non-governmental defendant's activities to support the application of the political question doctrine. See Sarei, ___ F.3d at ___, 2011 WL 5051927, at *15 ("The United States was not directly or indirectly involved in any of the events that occurred in [Papua New Guinea]." (emphasis added)). Instead, the Ninth Circuit found the United States' funding of the bulldozers in Corrie "decisive" because it was the fact of that funding that evidenced the executive and legislative branches' political determination that the foreign policy and national security interests of the United States were served by supporting Israel's acquisition of the bulldozers. Here, the evidence that Congress and the executive branch made a policy decision to support the 18th Brigade is similarly "decisive" that the political question doctrine bars plaintiffs' theory of liability against Occidental.

Plaintiffs reliance on Linder v. Portocarrero, 963 F.2d 332 (11th Cir. 1992), is similarly unavailing. In Linder, the heirs of a man killed in Nicaragua by members of the United States-supported "contra" rebels sued the individual contras responsible for the killing. As plaintiffs note, the Eleventh

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-8957 PA (AJWx) | Date | February 13, 2012 |
|---|---|---|---|
| Title | Flor Marina Chavarro Saldaña, et al. v. Occidental Petroleum Corp. | | |

Circuit declined to dismiss the heirs' claims against the individuals allegedly responsible for the killing based on ordinary tort principles because that theory of liability "challenges neither the legitimacy of the United States foreign policy toward the contras, nor does it require the court to pronounce who was right and who was wrong in the Nicaraguan civil war. On the contrary, the complaint is narrowly focused on the lawfulness of the defendants' conduct in a single incident." Id. at 337. Importantly, however, the Eleventh Circuit concluded that to the extent the Complaint in Linder attempted to assert theories of liability against the larger organizational elements of the contras and inquired into "the relationship between United States policy and the actions of the contras," those "broad allegations . . . against the defendant [contra] organizations, which comprise the entire military and political opposition in Nicaragua, are non-justiciable, and the motion to dismiss them [based on the political question doctrine] was properly granted." Id. at 335 & 337.

Here, plaintiffs have advanced no theory of liability against Occidental that would not apply with equal force to the foreign policy and national security determinations made by the political branches. Because any finding of liability against Occidental for its alleged funding and support of the 18th Brigade would necessarily call into question the support provided to the 18th Brigade provided by the executive and legislative branches, plaintiffs' claims present a non-justiciable political question. Plaintiffs have articulated no additional facts or theories to impose liability on Occidental for funding the 18th Brigade that would not also require the Court to question the political branches' support for the 18th Brigade. As a result, the Court concludes that providing plaintiffs with an opportunity to amend would be futile.

Conclusion

For all of the foregoing reasons, the Court concludes that the Court lacks jurisdiction to consider plaintiffs' Complaint because it raises non-justiciable political questions. The Court therefore grants Occidental's 12(b)(1) Motion to Dismiss based on the political question doctrine. The Court declines to address the remaining arguments contained in Occidental's Motion to Dismiss. Occidental's Alternative Motion to Stay is denied as moot.

IT IS SO ORDERED.